IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| TASHIRO RUDY TILLMAN, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | Case No. 14-CV-0150-CVE-FHM |
| SHARON NEUMANN, | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus action. After the Court denied Respondent's motion to dismiss, see Dkt. # 12, Respondent filed a response to the petition (Dkt. # 13), and provided the state court records necessary for resolution of Petitioner's claims. See Dkt. ## 13, 14. Petitioner, a state inmate appearing pro se, filed a reply (Dkt. # 17) to the response. For the reasons discussed below, the Court finds that the petition shall be denied.

### *BACKGROUND*

At approximately 9:00 p.m., on August 16, 2005, an unmarked van with tinted windows carrying five (5) Tulsa Police Department (TPD) officers pulled into the parking lot of the Dash In, a convenience store located at 1500 East Apache Street in Tulsa, Oklahoma. Present in the van were Officers James Comstock, Jeff Henderson, Bill Yelton, Bruce Bonham, and Corporal Larry Edwards. The officers were investigating the area after having received multiple complaints of drug dealing and prostitution. As the van pulled into the parking lot, the officers observed a man, later identified as Tashiro Rudy Tillman, standing in front of a parked Lexus. The man initially approached the van and looked in as Corporal Edwards, wearing his full TPD uniform and sitting in the front passenger seat, began to roll down his window. As Edwards and Officer Henderson, seated in the rear passenger side seat, moved to exit the van, the man backed away and Edwards and

Henderson observed him reach into the front passenger side window of the parked Lexus. The man then continued skipping backwards down the sidewalk of the convenience store until he reached the west end of the building. Edwards and Henderson gave chase. Both Edwards and Henderson saw the man make a throwing motion with his arm as he rounded the building and then began sprinting away through an open field behind the building. Edwards was able to tackle the man after running approximately 222 feet down a path in the field. Henderson arrived within a few minutes and helped Edwards subdue the man and return him to the parking lot. Henderson searched the man and found $220 in his pants pocket. Both Edwards and Henderson directed Officer Yelton to search the area where they saw the man make a throwing motion. Within a few minutes, Yelton located a small baggie containing a substance later identified as crack cocaine.

Based on those events, Petitioner Tashiro Rudy Tillman was convicted by a jury of Unlawful Possession of a Controlled Drug (Cocaine), After Former Conviction of Two Felonies (Count 1), and Obstructing an Officer (Count 2), in Tulsa County District Court, Case No. CF-2005-3654. On January 17, 2006, the trial judge sentenced Petitioner, in accordance with the jury's recommendation, to twenty (20) years imprisonment on Count 1 and three (3) months imprisonment on Count 2, and ordered the sentences to be served concurrently. See Dkt. # 14-6 at 3. Petitioner was represented at trial by attorney Steven Vincent. See Dkt. # 14-4 at 1.

Petitioner appealed to the Oklahoma Court of Criminal Appeals (OCCA). Represented by attorney Andreas T. Pitsiri, Petitioner raised five (5) claims, as follows:

> Proposition 1: Admission of other crimes evidence prejudiced the jury, deprived Mr. Tillman of his fundamental right to a fair trial and warrants reversal of his convictions.
>
> Proposition 2: Mr. Tillman was prejudiced by ineffective assistance of counsel.
>
> Proposition 3: The 20-year sentence imposed against Mr. Tillman in Count 1 is excessive and should be favorably modified.
>
> Proposition 4: The cumulative effect of all these errors deprived Mr. Tillman of a fair trial.
>
> Proposition 5: The Court should remand Mr. Tillman's case to the district court of Tulsa County with instructions to correct the judgment and sentence by an order *nunc pro tunc*.

(Dkt. # 13-1). In an unpublished summary opinion, filed June 29, 2007, in Case No. F-2006-132 (Dkt. # 13-3), the OCCA affirmed the Judgment and Sentence of the state district court. Nothing in the record suggests that Petitioner filed a petition for writ of certiorari at the United States Supreme Court.

On June 25, 2010, Petitioner filed an application for post-conviction relief (Dkt. # 10-1). The state district judge appointed an attorney from the public defender's office, Curtis Allen, to represent Petitioner in his post-conviction proceeding. See Dkt. # 10-3. On March 7, 2012, Mr. Allen filed a supplement to the application for post-conviction relief. Id. The district judge denied the requested relief on April 10, 2012 (Dkt. # 10-5). Petitioner then appealed to the OCCA. The OCCA ordered the district court to file a response to the issues raised on post-conviction appeal. On November 13, 2012, Tulsa County District Judge James M. Caputo filed a response brief as ordered by the OCCA (Dkt. # 13-4). By order filed February 14, 2014, in Case No. PC-2012-412 (Dkt. # 13-6), the OCCA affirmed the district court's denial of post-conviction relief.

On March 31, 2014, Petitioner filed this petition for writ of habeas corpus (Dkt. # 1). In his petition, Petitioner raises two (2) claims, as follows:

> Ground One: The State of Oklahoma failed to disclose evidence favorable to the Petitioner in violation of Brady v. Maryland, [373 U.S. 83 (1963)], under the Fifth and Fourteenth Amendments to the United States Constitution.
>
> Ground Two: Newly discovered evidence establishes that the petitioner is entitled to the vacation of his conviction.

Id. Specifically, Petitioner claims that Tulsa police officers Jeff Henderson, Larry Edwards, Bill Yelton, and Bruce Bonham "manufactured a story, falsified the police reports, and intentionally testified falsely against the petitioner under oath at the preliminary hearing and jury trial." Id. at 8-9. Petitioner states that "he 'never' was in possession of the cocaine in question and believes it was planted." Id. at 9. Petitioner's claims are based on the fact that, in 2010, Officers Henderson, Yelton, and Bonham were indicted and later tried on corruption charges in this federal district court.[1] See N.D. Okla. Case Nos. 10-CR-116-BDB, 10-CR-117-BDB.[2] In response to the petition, Respondent argues that Petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d). See Dkt. # 13.

## *ANALYSIS*

**A.  Exhaustion/Evidentiary Hearing**

As a preliminary matter, Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Respondent

---

[1] No allegations of misconduct were ever made against Corporal Larry Edwards. He was neither investigated nor charged.

[2] In N.D. Okla. Case No. 10-CR-117-BDB, Jeff M. Henderson was convicted by a jury of two (2) counts of Deprivation of Civil Rights and six (6) counts of Perjury, and sentenced to a total term of imprisonment of forty-two (42) months. The incidents giving rise to those convictions occurred in 2008 and 2009, after Petitioner committed his crimes in 2005, and were unrelated to Petitioner's case. In that same federal case, William Yelton was acquitted by a jury. In N.D. Okla. Case No. 10-CR-116-BDB, Ernest Bruce Bonham was acquitted by a jury.

concedes, see Dkt. # 13 at 2, ¶ 5, and the Court agrees, that Petitioner fairly presented his habeas claims to the OCCA on post-conviction appeal. Therefore, the Court finds that Petitioner satisfied the exhaustion requirement of 28 U.S.C. § 2254(b).

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Cullen v. Pinholster, 563 U.S. 170, 184-85 (2011); Williams v. Taylor, 529 U.S. 420 (2000).

**B.     Claims adjudicated by the OCCA**

**1.  Standards of review**

The OCCA adjudicated Petitioner's post-conviction claims on the merits. Petitioner raises those claims in his habeas petition. Therefore, Petitioner's habeas claims will be reviewed pursuant to standards imposed by the Antiterrorism and Effective Death Penalty Act (AEDPA). Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). An unreasonable application by the state courts is "not merely wrong; even 'clear error' will

5

not suffice." White, 134 S. Ct. at 1702 (citing Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)); see also Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013).

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. Section 2254(d) bars relitigation of claims adjudicated on the merits in state courts and federal courts review these claims under the deferential standard of § 2254(d). Id. at 98; Schriro v. Landrigan, 550 U.S. 465, 474 (2007). Further, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**2. Petitioner is not entitled to habeas corpus relief**

### a. Brady violation

As his first proposition of error, Petitioner alleges that the prosecution failed to disclose favorable evidence with regard to Officer Jeff Henderson in violation of Brady v. Maryland, 373 U.S. 83 (1963). See Dkt. # 1 at 5-6. In his application for post-conviction relief, Petitioner alleged that he was denied his right to a fair trial when Officer Henderson provided false testimony against him to obtain a conviction. See Dkt. # 10-1 at 2. In affirming the district court's denial of post-conviction relief, the OCCA thoroughly analyzed Petitioner's claim and found as follows:

6

Petitioner's basic argument in this matter is that if he had known about and so could have presented evidence of the police misconduct from other settings and cases that was committed by Officers Henderson, Yelton and Bonham, who each testified against Petitioner in this case, it would have changed the result of his trial. Petitioner argues that those officers' knowledge of their own misconduct should be imputed to the prosecution, and he should be granted a new trial because of the State's failure to disclose such evidence.

The suppression by the prosecution of evidence favorable to an accused, upon request, violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution. *Brady*, *supra*, 373 U.S. at 87. Where the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of impeachment evidence affecting credibility falls within this general rule regarding suppression of material evidence favorable to an accused. *Giglio*, *supra*, 405 U.S. at 154; *see also Bagley*, *supra*, 473 U.S. at 676. To comply with *Brady*, the individual prosecutor in a criminal case has a duty to learn of any favorable evidence known to the others acting on the government's behalf, including the police. *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999) (pre-trial notes taken by detective during witness interviews cast serious doubts on significant portions of a witness's trial testimony, but do not establish reasonable probability that, even if used, notes would have caused result of trial to be different); *Kyles v. Whitley*, 514 U.S. 419, 437-38, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995) (the cumulative effect of suppression of three different types of evidence favorable to the defendant raises a reasonable probability that disclosure would have produced a different trial result). When the State should have disclosed evidence favorable to the defendant, this Court looks at the materiality of the non-disclosed information and asks if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Wright*, *supra*, 2001 OK CR 19 at ¶ 38, 30 P.3d at 1157, citing *Bagley* and *Kyles*.

Courts addressing the issue of police misconduct in the original case before them always look to the materiality of the non-disclosed information and ask if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Brady*, *supra*; *Bagley*, *supra*; *Strickler*, *supra*; *Kyles*, *supra*; *Wright*, *supra*. Different policy considerations come into play when the police misconduct was committed in cases or setting unrelated to the original case.

Several courts that have addressed whether a new trial should be granted because of alleged suppression of police misconduct in unrelated cases have held that the misconduct cannot be imputed to the prosecution. *United States v. Rosner*, 516 F.2d 269, 279-81 (2d Cir. 1975) (witness's perjured testimony about the extent of his criminal misconduct in unrelated cases should not be imputed to the prosecution);

*People v. Johnson*, 226 A.D.2d 828, 829, 641 N.Y.S.2d 148 ([N.Y. App. Div.] 1996) (fingerprint expert's conviction for tampering with evidence in unrelated cases cannot be attributed to the People in their prosecution of defendant's case); *People v. Vasquez*, 214 A.D.2d 93, 95, 101, 631 N.Y.S.2d 322 ([N.Y. App. Div.] 1995) (corrupt officer's concealment of his own prior criminal conduct unrelated to defendant's prosecution should not be imputed to the People); *Breedlove v. Florida*, 580 So.2d 605, 607 (Fla. 1991) (the prosecution has not suppressed evidence under *Brady* because nothing shows the prosecution knew of the criminal activities in unrelated cases). However, even after finding the police misconduct should not be imputed to the prosecution, those courts go on to analyze the material effect the misconduct evidence would have had on the defendant's case.

Other courts have found that police misconduct by members of the prosecution team, even in unrelated settings and cases, can be imputed to the prosecution and analyzed for materiality. *Arnold McNeil*, 622 F. Supp. 2d 1294, [1315-16] (M.D. Fla. 2009) (police detective's misconduct in unrelated cases should be imputed to the prosecution where the detective was a key witness and his illegal conduct was of the same nature and occurring at the precise time of defendant's alleged crimes); *United States v. Jones*, 399 F.3d 640, 647 (6th Cir. 2005) (evidence of police misconduct in other cases that did not exist at time of trial was not *Brady* material, and evidence that did exist was not material). While conduct amounting to criminal activity by the police gets the most serious scrutiny, none of the courts have precluded an analysis of misconduct that did not result in a conviction or that did not rise to the level of criminal activity.

It is the better practice that any evidence of prosecution team misconduct in unrelated settings or cases not be imputed to the prosecution, unless the defendant shows that the police misconduct in the unrelated cases or settings was occurring during the same time period and was of the same nature as the defendant's crimes. If the defendant can make such a showing, then the matter should be analyzed to determine if the suppressed police misconduct had been disclosed to the defense, the result of the proceeding would have been different, i.e.[,] whether the defendant received a conviction and sentence worthy of confidence even though the misconduct was not disclosed. *Wright*, *supra*, 2001 OK CR 19, ¶¶ 38-40, 30 P.3d at 1157.

In this case, Petitioner acknowledges that there is no actual evidence of police misconduct in his case. Petitioner has shown that some alleged misconduct was committed by members of his prosecution team during a period beginning before Petitioner's crimes were committed and continuing through the time of his crimes. We find, however, that Petitioner has made no showing that any misconduct committed by his prosecution team in other settings or cases is of the same type as his crimes in this case. The misconduct alleged in Petitioner's pleadings, committed during the time of Petitioner's crimes, consists of police officers' fabrication of evidence from supposedly reliable confidential informants in order to obtain search

8

warrants, and perjured testimony regarding such evidence. Petitioner's case does not involve confidential informants, search warrants, or perjury. Moreover, the officers involved in Petitioner's case were all acquitted of charges filed for the alleged misconduct occurring during the same time period as the defendant's crimes.

In addition, the non-disclosed evidence in Petitioner's case was not material and did not affect the outcome of Petitioner's trial. *Wright*, *supra*. Four officers involved in Petitioner's case gave consistent testimony regarding the events that resulted in Petitioner's arrest and conviction. Petitioner's jury heard evidence that the officers were in an unmarked van with tinted windows when they pulled into the parking lot of the Dash In at 15th and Apache in Tulsa. Petitioner was standing in front of a car parked in front of the Dash In. Petitioner had moved toward and looked in that van when he saw police officers starting to get out. The jury heard consistent evidence that Petitioner backed up, stuck his hand inside the passenger window of the parked car, and then stared running backward or side stepping, breaking into a full sprint when he rounded the corner of the store. The two officers in the passenger side of the van got out and gave chase. Officer Larry Edwards of the Tulsa Police Department caught Petitioner after a foot chase of some length. Officer Henderson was following and helped handcuff Petitioner and take him back to the store.

Both officers involved in the chase saw Appellant make a throwing motion as he rounded the side of the store. They instructed Officer Yelton to look around the location where they saw Petitioner make the throwing motion. Officer Yelton found a small baggie with what appeared to be rock cocaine, which later tested positive as cocaine. Petitioner did not present any evidence in defense.

Petitioner's *pro se* post-conviction application contends that "Larry Edwards' testimony was impeached by the trial court." Petitioner's post-conviction application filed by counsel claims that the "testimony of the only untainted witness, Officer Edwards, was confused, contradictory and circumstantial." Petitioner contends the non-disclosed evidence of misconduct by the other officers involved in his case would have changed the result of his trial. At trial, Edwards acknowledged that during the preliminary hearing he testified that the field test took place at the scene. Edwards admitted he was now testifying at trial that he had been told by others the substance was field tested but actually did not know when the test was made. Officer Edwards also acknowledged that he had testified at preliminary hearing to having seen Petitioner make the throwing motion at the west side of the parking lot on the blacktop. During trial, Officer Edwards acknowledged that having returned to the scene and refreshed his memory, he must amend his earlier testimony to state that he had seen Petitioner make the throwing motion on the west side of the store by the dumpsters. Therefore, Petitioner's jurors were apprised of Edward's changes in testimony and the reasons for that change. After considering the facts and evidence presented to the jury, we find that the non-disclosed allegations of misconduct

involving confidential informants, search warrants, and perjury, allegations of which the officers involved were acquitted, were not material and did not affect the outcome of Petitioner's trial. *Wright*, *supra*.

See Dkt. # 13-6 at 5-11 (footnote omitted).

The United States Supreme Court has stated that the prosecutor has a duty to disclose evidence favorable to an accused "even though there has been no request by the accused, and that the duty encompasses impeachment evidence as well as exculpatory evidence." Strickler v. Greene, 527 U.S. 263, 280 (1999) (citing Brady, 373 U.S. at 87; United States v. Agurs, 427 U.S. 97, 107 (1976); United States v. Bagley, 473 U.S. 667, 676 (1985)). "Such suppression of evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial. . . . [A] constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." Bagley, 473 U.S. at 678. The Supreme Court explained that the test for materiality of evidence is as follows: "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. at 682; see also Turner v. United States, 2017 WL 2674152 (2017) (quoting Cone v. Bell, 556 U.S. 449, 469-70 (2009)). Suppression of exculpatory evidence by the state "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecution." Brady, 373 U.S. at 87. Impeachment evidence implicates a criminal defendant's due process rights when the reliability of a given witness may be determinative of the defendant's guilt or innocence. Giglio v. United States, 405 U.S. 150, 154 (1972).

In this case, even if knowledge of Henderson's misconduct were imputed to the prosecution, the Court has evaluated the materiality of the withheld evidence in light of the entire record in order to determine if the omitted evidence creates a reasonable doubt that did not otherwise exist. The Court finds Petitioner has failed to demonstrate the existence of a reasonable probability that the State's failure to produce timely any evidence of Henderson's misconduct resulted in a verdict unworthy of confidence. First, even if the prosecution possessed information before and during Petitioner's trial that Henderson had engaged in corrupt activities, Petitioner has failed to show how this Brady violation undermines confidence in the outcome of the trial. Although Henderson was the only police officer who testified that he saw a baggie leave Petitioner's hand as Petitioner made a throwing motion, Corporal Edwards also testified that he saw Petitioner make a throwing motion as Petitioner sprinted around the corner of the Dash In. See Dkt. # 14-5, Tr. Vol. II at 28. The baggie containing crack cocaine was found in the same area where Edwards saw Petitioner make a throwing motion. Id. at 31. Even though Edwards' trial testimony differed slightly from his preliminary hearing testimony, he explained to the jury why his testimony had changed. Edwards testified consistently that he saw Petitioner make a throwing motion as he rounded the west side of the building. The baggie containing cocaine was found in the area where Edwards saw Petitioner make the throwing motion. Based on Edwards' testimony, Petitioner has not demonstrated that the alleged failure to disclose evidence of Henderson's corrupt activities, in violation of Brady, undermines confidence in the outcome of the trial. Further, the OCCA's ruling that the error was not material in light of the other evidence presented at trial was not contrary to federal law. In addition, as discussed in more detail below, Petitioner has failed to present clear and convincing evidence to rebut the OCCA's findings of fact concerning the timing and type of Henderson's crimes

11

relative to the timing and type of Petitioner's crimes. Therefore, those findings of facts are presumed correct.

In summary, Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). Petitioner's request for habeas corpus relief on Ground 1 is denied.

### b. Evidence of a conspiracy among Tulsa police officers

As his second ground of error, Petitioner states that "new evidence of credibility issues concerning then-police officers Jeff Henderson and Bruce Bonham" warrants a new trial. See Dkt. # 1 at 7. Petitioner claims that the Tulsa police officers planted evidence against him and committed perjury at his trial. Id. at 7-9. The OCCA denied relief on this claim, finding that:

> The District Court denied Petitioner's application for post-conviction relief finding that the earliest misconduct offense for which Officer Henderson was convicted occurred more than two years after Petitioner's trial in this case. The District Court concluded that the State did not violate *Brady* and *Giglio* with respect to Petitioner's case, because it would have been impossible to turn over, prior to Petitioner's trial, any evidence of Officer Henderson's misconduct. The District Court also found that Petitioner had not produced any evidence of police corruption that affects Petitioner's case, and that none of the counts for which Officer Henderson was convicted involve the Petitioner.

See Dkt. # 13-6 at 2 (footnotes omitted).

Petitioner's allegations that the police officers planted evidence and committed perjury are conclusory and unsubstantiated. Beyond Petitioner's speculation, the record reflects no basis to conclude that a conspiracy of any type existed in this case. These unsupported accusations are insufficient to support the issuance of habeas corpus relief. Estes v. Warden, Utah State Prison, 1993 WL 498179, *1 (10th Cir. Dec. 2, 1993) ("petitioner's unsubstantiated accusations, statements

12

of conclusions, beliefs, opinions, and allegations of perjury and conspiracy fail to present a supportable basis" for habeas relief); see also Agurs, 427 U.S. at 103-04 (stating that relevant inquiry is whether (1) "the undisclosed evidence demonstrates that the prosecution's case includes perjured testimony"; (2) "the prosecution knew, or should have known, of the perjury"; and (3) "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury"). Petitioner has not demonstrated "that the prosecution's case include[d] perjured testimony and that the prosecution knew, or should have known, of the perjury.'" Agurs, 427 U.S. at 103.

The Court notes that, in his reply to Respondent's response (Dkt. # 17), Petitioner cites an order vacating judgment and sentence entered by Tulsa County District Judge William C. Kellough, on September 10, 2010, in Tulsa County District Court, Case No. CF-2004-2595, State v. Reeves. Significantly, Petitioner does not provide a copy of the order. However, he states that the order references misconduct by Henderson occurring on the "27th day of May, 2004 and on April 7, 2005." Id. at 2. Petitioner then alleges that "the aforementioned court order regarding Jeff Henderson's 2004 and 2005 misconduct, was suppressed by the prosecution." Id. Needless to say, to the extent Petitioner is claiming that the prosecution suppressed the 2010 order at the time of his trial in 2006, the claim is nonsensical. To the extent Petitioner is complaining that Respondent failed to produce the 2010 order in this habeas action, his claim lacks merit because Petitioner himself has the burden of presenting "clear and convincing" evidence to rebut any findings of fact made by the state courts. 28 U.S.C. § 2254(e)(1). Petitioner's description of the 2010 order is insufficient to overcome the presumption of correctness afforded the OCCA's factual findings that it would have been "impossible to turn over, prior to Petitioner's trial, any evidence of Officer Henderson's misconduct," and "that none of the counts for which Officer Henderson was convicted

13

involve the Petitioner." See Dkt. # 13-6 at 2. As stated above, Petitioner has failed to present clear and convincing evidence to rebut the OCCA's findings of fact concerning the timing and circumstances of Henderson's crimes relative to the timing and circumstance of the incident giving rise to Petitioner's convictions. Therefore, those findings of facts are presumed correct.

As part of Ground 2, Petitioner also claims that he is "actually and factually innocent." See Dkt. # 1 at 8. To make the requisite showing of actual innocence, a petitioner must produce "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial" and "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup v. Delo, 513 U.S. 298, 324-27 (1995). In the context of the hypothetical freestanding actual innocence claim, the Supreme Court has described the threshold as "extraordinarily high." Herrera v. Collins, 506 U.S. 390, 417 (1993). Here, Petitioner has not produced evidence from which a finding of actual innocence could be reasonably drawn.

In summary, Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). Petitioner's request for habeas corpus relief on Ground 2 is denied.

**Certificate of Appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional

right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that this Court's application of AEDPA standards to the OCCA's decision is debatable amongst jurists of reason. See Dockins v. Hines, 374 F.3d 935, 937-38 (10th Cir. 2004). A certificate of appealability shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The petition for writ of habeas corpus (Dkt. # 1) is **denied**.
2. A certificate of appealability is **denied**.
3. A separate judgment in favor of Respondent shall be entered in this matter.

**DATED** this 27th day of June, 2017.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE